**United States District Court**

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LWANDA OKELLO,

    Plaintiff,

v.

CARI M. DOMINGUEZ, Chair, U.S. Equal Employment Opportunity Commission,

    Defendant.

No. C 04-2528 MHP

**MEMORANDUM AND ORDER**
Re: Defendant's Motion for Summary Judgment

    On June 24, 2004, pursuant to Title VII of the Civil Rights Act of 1964 and alleging jurisdiction under 42 U.S.C. section 2000e-5, plaintiff Lwanda Okello ("plaintiff") filed this lawsuit against defendant Carim Dominguez, Chair of the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleges discrimination based on race, sex, age, disability, and reprisal because defendant denied plaintiff's requests for reasonable accommodation to transfer from the local Oakland, California office of the Equal Employment Opportunity Commission to the agency's Seattle, Washington office, and because defendant did not process this request in a timely manner. Defendant presently moves for summary judgment on plaintiff's discrimination claims.[1] Having considered the parties' arguments and submissions, and for the reasons set forth below, the court now enters the following memorandum and order.

BACKGROUND[2]

Plaintiff began working at the Oakland office of the EEOC in 1988, and is currently employed there as a GS-1810-12 Investigator. Req. for Judicial Notice ("RJN"), Exh. 1 ("Recommended Decision, EEO Complaint No. 0-9800056-OA") at 3. In 1989, plaintiff made his first request for reassignment to the Seattle office, and his application was rejected. Id. Between 1989 and 1998 plaintiff periodically applied for a hardship transfer to the Seattle office, sending requests both directly to Seattle and to EEOC headquarters in Washington, D.C., but all of these requests were rejected. RJN, Exh. 1 at 3; Exh. 3 ("Employment Discrimination Complaint Case No. 00-CV-597") at ¶¶ 4-6. In February 2000, plaintiff filed his first lawsuit in the Northern District of California alleging that he had been denied a hardship transfer based on his race, sex, and disability (high blood pressure and dyslexia). Id.

On August 16, 2000, the court granted the government's motion to transfer venue to the Western District of Washington because the site of the alleged discrimination and some related records were located in Seattle. RJN, Exh. 5 ("Order Denying Defendant's Motion to Dismiss and Granting Defendant's Motion to Transfer For Convenience") at 3. The district court in Washington subsequently granted defendant's motion for summary judgment on August 14, 2001. RJN, Exh. 7 ("Order Granting Defendant's Motion For Summary Judgment"). Despite concluding that plaintiff had made a prima facie case for race and sex discrimination, the court concluded the plaintiff's claim could not survive because he had presented no evidence that defendant's motivation for rejecting plaintiff's request for reassignment was discriminatory. Id. at 4.

On January 14, 2002, plaintiff asked Joyce A. Hendy, Director of the Oakland office, for a transfer to the Seattle office as a reasonable accommodation. Okello v. Dominguez, EEOC Complaint Nos. 200200051 and 200300104 at 4 (March 17, 2004) (hereinafter "Final Decision"). Two days later, Ms. Hendy sent by fax and regular mail plaintiff's request to Barbara Lawrence, EEOC's Disability Program Manager (DPM) and Jacqueline Bradley, Director of Field Management Programs in Washington, D.C. Id. at Tab F, Exh. F-12. When four months passed without a response, plaintiff inquired about the status of his request and Ms. Lawrence told him that she had

2

never received Ms. Hendy's January 2002 transmission. Id. at Tab F, Exh. F-14. Lawrence appears to have first received plaintiff's request in May 2002. Denicoff Dec. ¶ 4.

As a result of this delay, plaintiff filed a formal EEO complaint with the EEOC on August 5, 2002 alleging that he was discriminated against based on his race, sex, age, disability, and reprisal when (1) he applied for reasonable accommodation on January 16, 2002, and EEOC did not process his request in a timely manner; and (2) he did not receive approval for a transfer to Seattle as an accommodation. Final Decision at 2. The complaint was assigned to the new DPM, Todd Denicoff, and investigator Patricia St. Clair. Id. at Tab F, Exh. F1 & Tab C, C1.

Lawrence died unexpectedly in January 2003. Simmons Dec., Exh. 3. The following month, plaintiff's reasonable accommodation request was taken over by Denicoff as Denicoff investigated plaintiff's complaint about the delay. Denicoff Dec. ¶ 2 On April 14, 2003, Denicoff issued a denial of plaintiff's request for reasonable accommodation to SEDO because there was no vacancy at plaintiff's GS-12 work level and none was expected to occur within the next 60 days. Final Decision at 9.

On June 24, 2004, plaintiff filed the present action in this court alleging discrimination on the basis of race and sex under Title VII of the Civil Rights Act of 1964 and jurisdiction under 42 U.S.C. section 2000e-5 for the EEOC's failure to process his reasonable accommodation request in a timely manner and ultimate denial of his request. Plaintiff also alleges disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and the Rehabilitation Act, 29 U.S.C. § 794(a) ("Rehabilitation Act"). In addition to discrimination based on race, sex, age, and disability, plaintiff claims that he was discriminated against based on reprisal for prior protected activity.

On August 1, 2005, defendant moved to dismiss plaintiff's complaint based on res judicata, or in the alternative to transfer venue to the United States District Court for the Western District of Washington. This court entered an order denying defendant's motion to dismiss and denying defendant's motion to change venue on September 20, 2005.

Defendant filed this motion for summary judgment on August 7, 2006. Plaintiff's opposition to this motion stated that plaintiff was unable to respond fully to defendant's motion because

3

defendant had not responded to outstanding discovery requests that would produce evidence related to plaintiff's claims. Accordingly, on September 19, 2006 this court issued an order continuing defendant's motion for over one month to allow defendant an opportunity to provide additional discovery responses to plaintiff, and to allow plaintiff to supplement his opposition based on any new evidence. Plaintiff has not filed any additional briefs or cited to any new evidence in support of his claims.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, Anderson, 477 U.S. at 249, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

## DISCUSSION

Plaintiff alleges unlawful discrimination on the basis of race, national origin, and/or sex and retaliation in violation of Title VII of the Civil Rights Act of 1964. See 42 U.S.C §§ 2000e, et seq. Title VII of the Civil Rights Act of 1964 makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer violates Title VII if a protected characteristic is "a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). Despite great confusion on this issue prior to 2002, the Supreme Court has made it clear that a plaintiff's burden in a Title VII disparate treatment case is no different than the "conventional rule of civil litigation." Desert Palace, Inc. v. Costa, 539 U.S. 90, 91 (2003). That is, "the plaintiff in any Title VII case may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played a motivating factor [in the employer's challenged actions]." See Costa v. Desert Palace, Inc., 299 F.3d 838, 853-54 (9th Cir. 2002) aff'd 539 U.S. 90 (2003) (internal quotations omitted).

Plaintiff also alleges unlawful discrimination based on age. Plaintiff's age discrimination claims are governed by the Age Discrimination in Employment Act ("ADEA"), which makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff also alleges disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and the Rehabilitation Act, 29 U.S.C. § 794(a) ("Rehabilitation Act"). Title I of the ADA provides that "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Rehabilitation Act states that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any . . . activity conducted by any Executive agency." 42 U.S.C. § 794(a). The standards for determining whether the Rehabilitation Act has been violated in the context of alleged employment discrimination are the same as those applicable to Title I of the ADA. Id. at § 794(d).

Plaintiff alleges disparate treatment based on race, sex, age and/or disability, as well as retaliation for exercising his anti-discrimination rights.

I.     Disparate Treatment

In cases alleging disparate treatment, Title VII requires a plaintiff to prove that the employer intentionally discriminated against the plaintiff. Odima v. Westin Tuscon Hotel Co., 991 F.2d 595, 599 (9th Cir. 1993). To prove intent to discriminate, plaintiff can pursue one of two analytical approaches: he can provide direct or circumstantial evidence of intent or he can invoke the now well-settled prima facie case and burden-shifting paradigm from McDonnell Douglas to establish circumstances sufficient to support an inference of discrimination. See Costa, 299 F.3d at 855; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

The McDonnell Douglas inquiry involves three analytical stages. First, a plaintiff must establish by preponderance of the evidence a prima facie case of discrimination. Odima, 991 F.2d at 599. Second, the burden of production shifts, requiring defendants to proffer a legitimate, non-discriminatory reason for the challenged action. Id. If defendant succeeds at carrying his burden of production, the plaintiff then has "the full and fair opportunity to demonstrate," through presentation of his case and through cross-examination of the defendant's witnesses, that discrimination, rather than the proffered reason, was the true reason for the employment decision. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Throughout these stages, a plaintiff retains the burden of persuasion to prove unlawful discrimination. Costa, 299 F.3d at 855. An identical framework applies to claims of unlawful discrimination based on disability and/or age. Raytheon Co. v. Hernandez, 540 U.S. 44, 53-54 (applying McDonnell-Douglas burden shifting analysis to a claim of employment discrimination based on disability); Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990) ("The shifting burden of proof applied to a Title VII discrimination claim also applies to claims arising under ADEA.").

As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because "the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000) (internal citations omitted).

Defendant argues that there is no evidence that other persons were treated differently from plaintiff, that the delay in processing plaintiff's paperwork is a de minimis act that cannot support a discrimination claim, and that in any case the delay in processing was neither egregious nor unjustified.

Plaintiff contests defendant's justification for the delay, arguing that the delay should be evaluated based on a multi-factor analysis. While the reason for and nature of the delay might be appropriate for a factfinder to consider, the court need not reach this issue because plaintiff has pointed to no evidence that his treatment resulted from discrimination based on race, age, sex, or disability. Plaintiff claims to have made out a prima facie case simply by "alleg[ing] that he was treated differently then similarly situated non-African American employees, under the age of 40, with no disabilities . . ." Without evidence to support this allegation, however, plaintiff's claim cannot survive summary judgment.

Accordingly, defendant is entitled to summary judgment on plaintiff's disparate treatment claim.

II.   Retaliation

To establish a prima facie case of retaliation under Title VII, plaintiff must show (1) that he acted to protect his Title VII rights; (2) that an adverse employment action was thereafter taken against him; and (3) that a causal link existed between the two events. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a); McGinest v. GTE Service Corp., 360 F.3d 1103, 1124 (9th Cir. 2004). Once plaintiff has made a prima facie showing, the analysis proceeds under the McDonnell-Douglas framework. Id.

Defendant conclusorily alleges that plaintiff has failed to make a prima facie case of retaliation. Plaintiff alleges that he engaged in the protected activity of submitting reasonable accommodation/hardship transfer (RA/HT) requests, and that defendant retaliated by intentionally mishandling his latest request. Plaintiff alleges that the EEOC suspended its normal processes such that plaintiff's request was unduly delayed, and that the suspension was in response to plaintiff's repeated attempts to secure a reasonable accommodation/hardship transfer over thirteen years.

A.      Protected Activity

It is unclear whether filing a reasonable accommodation request is a "protected activity" within the meaning of federal anti-discrimination laws. The case plaintiff cites in support of his position that it is did not reach that issue, but assumed that it was without so holding. Soileau v. Guilford of Maine, 105 F.3d 12, 16 (1st Cir. 1997). However, one court has held that filing such a request is "statutorily protected expression" constituting protected activity for the purposes of retaliation analysis. Garza v. Abbott Laboratories, 940 F. Supp. 1227, 1244 (N.D. Ill. 1996). Because defendant does not appear to contest that plaintiff's accommodation requests were a protected activity, the court will likewise assume that such activity satisfies the first prong of the discrimination analysis.

B.      Adverse Employment Action

The only evidence of an adverse employment action that plaintiff provides is the thirteen-month delay between the filing of his most recent request (January 2002) and the denial of that request (April 2003). Plaintiff asserts that defendant intentionally delayed the processing of his application. Plaintiff cites no evidence beyond his own bare assertions that the delay was the result of any internal rule changes, intentional disregard for EEOC procedures, or other bad faith on the part of the EEOC.

Defendant denies that a delay in processing a reasonable accommodation request can constitute an adverse employment action. The Ninth Circuit has broadly defined such actions to be any incident "reasonably likely to deter employees from engaging in protected activity." Ray v.

8

1  Henderson, 217 F.3d 1234, 1237 (9th Cir. 2000).  The EEOC's delay in processing plaintiff's request
2  may fit this description if plaintiff establishes that the delay was intentionally created in bad faith.
3  See Hixson v. County of Alameda Sheriff's Dept., No. 97-0589 SI, 1999 WL 305513 at *11 (N.D.
4  Cal. May 12, 1999) (Illston, J.) (holding that a delay in concluding an investigation of plaintiff's
5  complaint was not an adverse employment action where the delay was "explained by the
6  bureaucratic manner in which the Department" conducted the investigation).

7       Defendant asserts that plaintiff's transfer request was processed within a reasonable time, and
8  that any delay was due to the bureaucracy of the EEOC and the unforeseen death of the EEOC
9  employee who initially took charge of plaintiff's request.  Defendant has submitted evidence
10 showing the path that plaintiff's RA/HT request took within the EEOC system.  The request was
11 received in the EEOC's Oakland Office on January 14, 2002.  Hendy Dec. ¶ 4.  The document was
12 delivered to the EEOC's Washington, D.C. Headquarters two days later.  Id.  The request was
13 assigned to Barbara Lawrence, who received the request in May 2002.  Denicoff Dec. ¶ 4.  On May
14 31, 2002 Lawrence emailed plaintiff regarding his request.  Id., Exh. 1 at 2, ¶ B.  On July 12, 2002,
15 Lawrence emailed plaintiff again explaining that she had been unable to reach his medical provider
16 and that additional investigation would be necessary.  Id., Exh. 1 at 3, ¶ D.  Lawrence died
17 unexpectedly in January 2003.  Simmons Dec., Exh. 3.  On February 19, 2003, Denicoff informed
18 plaintiff that he would be taking over the file.  Simmons Decl., Exh. 3.  According to defendant,
19 Denicoff and plaintiff remained in contact until plaintiff's request was denied on April 16, 2003.  Id.,
20 Exh. 4.  Regarding any delays in processing, Denicoff states that he "did not delay making any
21 decisions regarding Mr. Okello's request for any reason—improper or otherwise."  Denicoff Dec. ¶
22 4.  Hendy states that she has "no information that anyone intentionally delayed the processing of Mr.
23 Okello's request.  Certainly, I did not."  Hendy Dec. ¶ 4.  Hendy further states that, in her experience,
24 "the fact that [plaintiff's] request appears to have gotten lost is not so strange within the Agency as to
25 cause suspicion that the delay was intentional."  Id. ¶ 5.

26      In response, plaintiff claims that defendant fails to properly account for the remaining gaps in
27 defendant's timeline, such as the four-month delay between the receipt of plaintiff's request and its
28 assignment to Lawrence.  Plaintiff further asserts that he "can submit evidence to show the

Defendant's explanation is not in accord with the Agency's procedures . . ." Plaintiff also asserts that he "can produce evidence to show that the investigation was suspended and biased." While plaintiff does not submit or describe with particularity the evidence to which he refers, it appears from the record that plaintiff has requested, without success, documentation from the EEOC regarding its RA/HT request processing policies. In an email to Patricia St. Clair dated March 7, 2003 regarding his case status, plaintiff asked St. Clair to "explain the policy and processing time for requests for RA." Final Decision at Tab F, Exh. F-1. That same day, St. Clair emailed Denicoff asking how many reasonable accommodation requests were received between October 14, 2001 and June 14, 2002, and asking what the average processing time was to complete a request during that time period. Id., Exh. F-7. Three days later, Denicoff responded that he "d[id]n't have an answer to that question." Id. Denicoff's email attributes the lack of information to poor record keeping and the lack of a computerized database. Id. These email communications are consistent with defendant's claim that the delay in processing plaintiff's request was the result of internal bureaucracy, and plaintiff submits no evidence to the contrary.

Because plaintiff has presented no evidence that his accommodation request was delayed intentionally and in bad faith, thereby constituting an adverse employment action, defendant is entitled to summary judgment on plaintiff's retaliation claim.

### C. Causal Link

Even if plaintiff could present evidence of an adverse employment action, summary judgment would still be proper because plaintiff has presented no evidence of a causal link between plaintiff's protected activity and the alleged adverse action. To establish retaliation, a plaintiff must also show that the adverse employment action is causally linked to the protected activity. Such causality may be inferred by close proximity in time between the two events, although such proximity must be "very close." See Bell v. Clackamas County, 341 F.3d 858, 865-66 (9th Cir. 2003) (holding that proximity in time may by itself constitute circumstantial evidence of retaliation). See also Porter v. California Dept. of Corrections, 383 F.3d 1018, 1030 (9th Cir. 2004) (holding that twenty months is too attenuated a length of time to suggest causation, but that causation was established where

10

specific reasons explained this delay). If a plaintiff cannot show proximity in time, he can prove causation by providing direct evidence of retaliatory motivation. Miller v. Fairchild, 797 F.2d 727, 731 (9th Cir. 1986).

Plaintiff alleges that the EEOC immediately suspended its policies when plaintiff submitted his RA/HT request in January 2002. Once again, plaintiff has no direct evidence of this suspension, or of the EEOC's policies in general regarding RA/HT processing. Because plaintiff has provided no evidence of a causal link between his protected activity and the alleged suspension of defendant's policies, defendant is entitled to summary judgment on plaintiff's retaliation claim.

CONCLUSION

For the foregoing reasons and as described herein, the court hereby GRANTS defendant's motion summary judgment. It is not clear from defendant's papers whether this motion is addressed to plaintiff's claim for reasonable accommodation. Therefore, the court does not address that claim. Thus, all claims except that for reasonable accommodation are dismissed. Defendant shall notify the court immediately of the status of that claim.

IT IS SO ORDERED.

Dated:    Oct. 26, 2006

_____

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Defendant's motion does not address plaintiff's ADA claim based on denial of a reasonable accommodation.

2. The parties in this action failed to submit a Joint Statement of Undisputed Facts, as required by this court's standing order and pursuant to Local Rule 56(2)(B). The background facts are taken from the record before the court and the parties' declarations.